SHEARMAN & STERLING LLP                                        Schulte Roth&Zabel LLP

April 20, 2018

**BY ECF AND EMAIL**

The Honorable Analisa Torres                The Honorable Sarah Netburn
United States District Judge                United States Magistrate Judge
500 Pearl Street                            40 Foley Square
New York, New York 10007                    New York, New York 10007

<u>Fire & Police Pension Ass'n v. Bank of Montreal et al.</u>, No. 18-cv-00342

Dear Judge Torres and Judge Netburn:

  Pursuant to point III.A of Judge Torres's Individual Rules of Practice in Civil Cases and Judge Netburn's order of April 3, 2018, we write on behalf of all Defendants to request leave of Court to file motions to dismiss under Rules 12(b)(1), (2) and (6) of the Federal Rules.

  This case is the latest in a series of lawsuits alleging a conspiracy to manipulate a financial benchmark—here, the Canadian Dealer Offered Rate ("CDOR")—in violation of the Sherman Act, the Commodity Exchange Act, the Racketeer Influenced and Corrupt Organizations Act, and state law. But in contrast to some prior benchmark cases, where the plaintiffs attempted to rely on government and regulatory enforcement investigations and charges, Plaintiff alleges nothing of the sort here. Amended Complaint ("AC") ¶ 261. In fact, Plaintiff cannot point to a single communication between two or more Defendants (or within any of them) plausibly suggesting a conspiracy to suppress CDOR. Instead, bereft of any facts related to the purported conspiracy, the AC relies on speculation and superficial "economic analyses" that, at most, suggest unremarkably that Defendants sometimes made similar CDOR submissions. That is not sufficient to state a plausible claim for relief on any legal theory. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-58 (2007). Defendants anticipate moving to dismiss the AC on the following principal bases:

  **1. <u>Personal Jurisdiction.</u>** The Court lacks personal jurisdiction over Defendants that are incorporated and maintain their principal places of business in foreign countries ("Foreign Defendants"). The Foreign Defendants are not "at home" in New York and, therefore, are not subject to general jurisdiction here. *See Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). The Foreign Defendants also are not subject to specific jurisdiction here. For a court to exercise specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Here, the alleged wrongful conduct—purported manipulation of a Canadian benchmark rate—if it occurred at all, occurred in Canada. To the extent Plaintiff seeks to rely on allegations regarding Foreign Defendants' purported out-of-forum conduct, the AC must plausibly plead that the allegedly tortious actions were expressly aimed at New York. *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011). But Plaintiff asserts merely that the effects of the Foreign Defendants' alleged conduct on domestic commerce were reasonably foreseeable. This is not enough. *Schwab v. Bank of America*, 883 F.3d 68, 87-88 (2d Cir. 2018) (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). Plaintiff's conspiracy allegations likewise cannot form the basis for specific jurisdiction because Plaintiff has failed to allege plausibly that "(1) a conspiracy

existed; (2) [Foreign Defendants] participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with [New York] to subject that co-conspirator to jurisdiction" here. *Id.* at 87 (citing *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013)).[1]

  2. *Sherman Act.* Plaintiff fails to plead facts plausibly suggesting a conspiracy to manipulate CDOR. As a threshold matter, Plaintiff makes no attempt to plead direct evidence—*i.e.*, "evidence that is explicit and requires no inferences to establish" an agreement to restrain trade. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011); *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013) (citing example of "a recorded phone call in which two competitors agreed to fix prices"). To the contrary, the AC identifies no such communications at all. At most, Plaintiff's allegations suggest that, by participating in trade associations (AC ¶¶ 259, 363-67, 371-72), Defendants had an "opportunity to conspire," *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 545 (2d Cir. 1993), but a "mere opportunity to conspire does not by itself support the inference that such an illegal combination actually occurred." *Id.*

  Nor does the AC allege plausible circumstantial evidence of an agreement among Defendants. Plaintiff alleges that *certain* Defendants had similar CDOR submissions for *certain* tenors during *certain* stretches of the proposed seven-year class period. AC ¶ 329. That is not enough to plead parallel conduct among all Defendants and across the entire alleged class period. Even if it were, such an allegation would not support a finding of collusion because parallel conduct is neither uncommon nor illegal. *Baltimore*, 709 F.3d at 135-37.

  Moreover, no "plus factors" are plausibly alleged here. *Id.* at 137. Plaintiff's primary plus factor claim is that Defendants submitted "suppressed" CDOR rates against their "economic self-interest" and had a "motive" to conspire. AC ¶¶ 288-306, 321. But the conclusory allegation that CDOR suppression would have conflicted with each Defendant's individual interest unless pursued through a conspiracy is flatly inconsistent with Plaintiff's allegation—also unsupported—that Defendants had a "net-short exposure to CDOR during the Class Period." AC ¶ 7. The AC's incoherent and contradictory claims rebut—and do not support—an inference of conspiracy. Nor do the AC's superficial "economic analyses" support any plus factors. Not only are these analyses flawed—*e.g.*, the alleged comparison between two different benchmarks (LIBOR and CDOR) measuring different rates based on different panels in different geographic markets (AC ¶ 314) does not remotely suggest artificiality—but they just repackage Plaintiff's insufficient parallel conduct allegations. The AC also fails to identify who prepared the analyses, and the analyses do not support the existence of a conspiracy with facts about

---

[1] Nor has Plaintiff adequately alleged facts sufficient to confer jurisdiction in New York over a foreign parent based on the alleged activities of its domestic subsidiary or affiliate. *See Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984). Furthermore, Plaintiff cannot sufficiently plead general jurisdiction over any Foreign Defendant based on compliance with registration statutes, regulatory supervision, or alleged use by Foreign Defendants of ISDA Master Agreements, or any other theory. And even if Plaintiff plausibly alleged a conspiracy by the Foreign Defendants (and it has not), Plaintiff has pled no facts suggesting knowledge or involvement by any Defendant that is subject to jurisdiction.

"who, did what, to whom (or with whom), where, and when," which are required to state a claim. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015) (citation omitted).

Finally, Plaintiff lacks standing under either Article III or the antitrust laws because, among other reasons, it makes purported class claims based on CDOR-based instruments in which it did not transact and based on transactions with parties other than Defendants.[2]  *See Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, 277 F. Supp. 3d 521, 545-46, 559-60 (S.D.N.Y. 2017).

**3. *Commodity Exchange Act ("CEA").*** The CEA claims are similarly deficient. *First*, Plaintiff must allege "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the [commodities] at issue," as well as the specific intent of each Defendant to manipulate the market. *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 535 (S.D.N.Y. 2008). Plaintiff fails to make any such allegations and also does not adequately allege proximate causation. *In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*, 2012 WL 6700236, at *16-18 (S.D.N.Y. Dec. 21, 2012) ("[T]he causation element [of a CEA claim] requires that a defendant be the proximate cause of the price artificiality.").[3] *Second*, all claims related to transactions in foreign exchange forwards and interest rate swaps that predated the effective date of the Dodd-Frank Act must be dismissed. *See, e.g.*, *Sonterra Capital*, 277 F. Supp. 3d at 570 ("FX forwards are excluded from regulation under the [Pre-Dodd-Frank] CEA."). Although Dodd-Frank's amendments to the CEA became effective July 16, 2011, Plaintiff's proposed class starts in 2007, and thus includes an unspecified number of transactions for which it fails to state a claim. *Third*, Plaintiff fails to state a claim or establish standing under the CEA. It may not rely on CEA Rule 180.1 for any transactions prior to that rule's effective date of August 15, 2011. *See In re Commodity Exch. Inc., Gold Futures & Options Trading Litig.*, 213 F. Supp. 3d 631, 672 (S.D.N.Y. 2016). Plaintiff also does not have a claim under Section 22(a)(1)(D) because it does not establish that CDOR is a commodity, *see, e.g.*, *LIBOR I*, 935 F. Supp. 2d at 720-21, or the commodity underlying the relevant instruments, or the direct price of the instruments. Plaintiff also lacks standing because it fails to plead actual damages, as required under CEA Section 22(a)(1).

**4. *RICO.*** Plaintiff's RICO claims should be dismissed for several reasons. *First*, RICO does not have extraterritorial application, *see Norex Petroleum Ltd. v. Access Indus., Inc.*, 631 F.3d 29, 32 (2d Cir. 2010), and here the RICO claims are based on transmission by Canadian

---

[2] Plaintiff alleges only that it had entered into CDOR-based foreign exchange forwards and interest rate swaps, but brings claims based on all "CDOR-Based Derivatives." AC ¶¶ 7-8.

[3] The CEA claims are also deficient because they are not pled with the requisite particularity, are impermissibly extraterritorial, do not allege how the purported CDOR manipulation impacted the price of the relevant instruments, and fail to allege any basis for aiding and abetting or principal-agent liability. *Loginovskaya v. Batratchenko*, 764 F.3d 266, 272 (2d Cir. 2014) (extraterritoriality); *Laydon v. Mizuho Bank*, 2014 WL 1280464 at *6 n.2 (S.D.N.Y. Mar. 28, 2014) (aiding and abetting and principal-agent liability); *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR I")*, 935 F.Supp. 2d 666, 713 (S.D.N.Y. 2013) (particularity).

entities within Canada of allegedly false Canadian benchmark rates to a Canadian company (Thomson Reuters, headquartered in Toronto), which then published the ultimate CDOR rate. Thus, the allegations in the AC fail to overcome the presumption against extraterritoriality, and "simply alleging that some domestic conduct occurred cannot support a claim of domestic application" of RICO. *Sonterra Capital Master Fund Ltd.*, 277 F. Supp. 3d at 580 (citation omitted). *Second*, Plaintiff lacks RICO standing because its alleged injuries are too remote from Defendants' alleged predicate acts. In *Laydon v. Mizuho Bank*, 2015 WL 1515487 (S.D.N.Y. Mar. 31, 2015), Judge Daniels rejected RICO claims relating to alleged manipulation of a benchmark—despite purported "statistical analyses"—because the plaintiffs had not alleged a "sufficiently direct connection between the alleged misconduct and the injury." *Id.* at *10. Plaintiff's threadbare allegations of injury here likewise fail the test. AC ¶¶ 285-97. *Third*, Plaintiff fails adequately to allege the other elements necessary for a RICO claim. Plaintiff's allegations of wire fraud (the purported "predicate acts") must be pled with particularity as to each Defendant. *See, e.g.*, *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). But the AC contains none of the necessary "who, what, when, and where" for any Defendant. Nor has Plaintiff pled anything—other than irrelevant legal conclusions—to show that "the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Reeves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Indeed, the AC does not even plead facts tending to establish the existence of an enterprise at all.

     **5.** <u>**State Law Claims.**</u>   Besides failing to plead any underlying illegality on which to base an unjust enrichment claim, *see supra*, Plaintiff also cannot assert such a claim against any Defendants with whom Plaintiff has not plausibly alleged a business relationship. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 479 (S.D.N.Y. 2014). Nor can Plaintiff's unjust enrichment claim stand as to Defendants with which Plaintiff allegedly transacted pursuant to a contract. *FrontPoint Asian Event Driven Fund L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *16 (S.D.N.Y. Aug. 18, 2017). Finally, "[a]s a matter of law . . . a contract claim asserting breach of the implied covenants of good faith and fair dealing does not survive a motion to dismiss when it is based only on generalized allegations and grievances." *Id.* at *15 (quotation omitted). That is all that is pled here. AC ¶¶ 484-89.

     **6.** <u>**Statute of Limitations.**</u>   Each claim is barred in whole or in part by an applicable statute of limitations: two years (CEA); four years (antitrust and RICO); and various periods for state law claims. Plaintiff attempts to avoid its dilatoriness by claiming fraudulent concealment, but fails to plead the requisite elements with particularity—specifically, that "the defendant concealed the existence of the . . . violation" and that any purported "ignorance was not the result of lack of diligence." *In re Commodity Exch., Inc.*, 213 F. Supp. 3d at 675. In fact, the "economic analyses" that purport to support the allegations are entirely based on publicly-available data that were continuously available. AC ¶¶ 301, 314, 322-27 (citing reports and data available since 2008 and 2009). Plaintiff therefore could have conducted the same analysis that is in the AC over ten years ago, but did not. Plaintiff's "general and conclusory" suggestion that Defendants were conspiring in secret (AC ¶ 420) is insufficient to overcome the AC's inadequacy. *In re IRS Antitrust Litig.*, 261 F. Supp. 3d 430, 490 (S.D.N.Y. 2017).

4

Respectfully submitted,

| | |
|---|---|
| SHEARMAN & STERLING LLP | SCHULTE ROTH & ZABEL LLP |
| By: /s/ Adam S. Hakki | By: /s/ Harry S. Davis |
| Adam S. Hakki<br>Jerome S. Fortinsky<br>599 Lexington Avenue<br>New York, New York 10022-6069<br>Phone: (212) 848-4000<br>adam.hakki@shearman.com<br>jfortinsky@shearman.com | Harry S. Davis<br>Brian T. Kohn<br>919 Third Avenue<br>New York, New York 10022<br>Telephone: (212) 756-2000<br>harry.davis@srz.com<br>brian.kohn@srz.com |
| Ryan Shores<br>401 9th Street, NW<br>Suite 800<br>Washington, DC 20004<br>Phone: (202) 508-8000<br>ryan.shores@shearman.com | *Counsel for National Bank of Canada, National Bank Financial Inc., and National Bank of Canada Financial Inc.* |
| *Counsel for Defendants Bank of Montreal, BMO Financial Corp., BMO Nesbitt Burns Inc., and BMO Capital Markets Corp.* | |
| LOCKE LORD LLP | DENTONS US LLP |
| Gregory T. Casamento<br>3 World Financial Center<br>New York, New York 10281<br>Telephone: (212) 812-8325<br>gcasamento@lockelord.com | Sandra D. Hauser<br>1221 Avenue of the Americas<br>New York, New York 10020-1089<br>Phone: (212) 768-6700<br>sandra.hauser@dentons.com |
| Roger B. Cowie<br>2200 Ross Avenue, Suite 2800<br>Dallas, Texas 75201<br>Telephone: (214) 740-8000<br>rcowie@lockelord.com | Stephen J. Senderowitz<br>William E. Walsh<br>233 South Wacker Drive, Suite 5900<br>Chicago, IL 60606-6361<br>Phone: (312) 876-8000<br>stephen.senderowitz@dentons.com<br>william.walsh@dentons.com |
| J. Matthew Goodin<br>111 South Wacker Drive<br>Chicago, Illinois 60606<br>Telephone: (312) 443-0700<br>jmgoodin@lockelord.com | *Counsel for Defendants Canadian Imperial Bank of Commerce, CIBC World Markets Corp., and CIBC World Markets, Inc.* |
| *Counsel for Defendants HSBC Holdings plc, HSBC Bank plc, HSBC North America* | |

*Holdings, Inc., HSBC USA Inc., HSBC Bank USA, N.A., HSBC Securities (USA) Inc., and HSBC Bank Canada*

LATHAM & WATKINS LLP

Richard D. Owens
Lawrence E. Buterman
Douglas K. Yatter
Leah Friedman
Corey A. Calabrese
885 Third Avenue
New York, New York, 10022
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
richard.owens@lw.com
lawrence.buterman@lw.com
douglas.yatter@lw.com
leah.friedman@lw.com
corey.calabrese@lw.com

*Counsel for Defendants Royal Bank of Canada, RBC Dominion Securities Inc., and RBC Capital Markets LLC*

WILMER CUTLER PICKERING HALE AND DORR LLP

David S. Lesser
Jamie S. Dycus
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
david.lesser@wilmerhale.com

*Counsel for Toronto-Dominion Bank, TD Securities Inc., and TD Securities (USA) LLC*

SHEARMAN & STERLING LLP

Daniel H. R. Laguardia
Jeffrey J. Resetarits
Edward T. Decker
599 Lexington Avenue
New York, NY 10022-6069
Telephone: 212-848-4000
Facsimile: 212-848-7179
daniel.laguardia@shearman.com
jeffrey.resetarits@shearman.com
edward.decker@shearman.com

John F. Cove Jr.
535 Mission St., 25th Floor
San Francisco, CA 94105-2997
Tel: 415-616-1100
Fax: 415-616-1199
john.cove@shearman.com

*Counsel for The Bank of Nova Scotia, Scotia Capital (USA) Inc., and Scotia Capital Inc.*

DAVIS POLK & WARDWELL LLP

Dana M. Seshens
Paul S. Mishkin
450 Lexington Avenue
New York, New York 10017
Phone: (212) 450-4000
dana.seshens@davispolk.com
paul.mishkin@davispolk.com

*Counsel for Defendants Bank of America Corporation, Bank of America, N.A., Merrill Lynch Canada Inc., and Merrill Lynch, Pierce, Fenner & Smith Incorporated*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Moses Silverman
Aidan Synnott
Hallie S. Goldblatt
Arianna Markel
1285 Avenue of the Americas
New York, New York 10019-6064
Phone: (212) 373-3000
msilverman@paulweiss.com
asynnott@paulweiss.com

*Counsel for Defendants Deutsche Bank AG, Deutsche Bank Securities Inc., and Deutsche Bank Securities Limited*